THEODORE RITCHIE *vs.* F. HEWELL PERRY.

Waldo.       Opinion December 3, 1930.

*Buzzell & Thornton*, for plaintiff.
*Ralph W. Farris*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, JJ.

DUNN, J., took no part in the decision of the case.

PATTANGALL, C. J.    Exceptions and motion. Action for property damage sustained in collision between two automobiles, alleged to have been caused by negligence of defendant. Verdict for plaintiff.

Exception was taken to the refusal of the presiding Justice to order a mistrial after counsel for plaintiff, during cross-examination of defendant, had begun a question with the assertion "At that time, September 11, 1929, you carried insurance . . ." September 11, 1929 was the date of the collision.

The question, thus prefaced, was not completed. Objection was made and mistrial requested. The presiding Justice excluded the question, warned the jury that the matter of insurance was immaterial and refused to order a mistrial.  Exceptions were noted.

Counsel for plaintiff then proceeded:

Q. "You and Mr. Ritchie talked this affair over after the accident, right there that night of September 11th?"

A. "Why, yes. We naturally would."

Q. "And did you and he have any talk that night about insurance?"

The Court: "Excluded."

Plaintiff's Counsel: "I will take exceptions to the Court's ruling.".

The request that a mistrial should be ordered was not renewed.

The matter of bringing or attempting to bring to the attention of the jury the fact that defendant is insured against liability or, to state it more accurately, that an insurance company, and not the party of record, is liable to pay damages if verdict is for plaintiff, has been before this court on three occasions, although never before in the exact form in which it now appears.

In *Sawyer* v. *Shoe Co.*, 90 Me., 369, direct evidence of the fact was admitted. Exceptions were taken and a new trial ordered. Mr. Justice Wiswell, voicing the opinion of the court, discussed the question in the following language:

"While the fact that the defendant was insured against accidents should have no legitimate bearing, it might very naturally have an improper influence upon the jury in passing upon the one question involved, whether or not the defendant had failed to exercise that degree of care which the law required of it . . .

"We think that to allow juries, in cases of this kind, to take into consideration the fact that an employer was insured against accidents, would do more harm than good, and would increase the already strong tendency of juries to be influenced, in cases of personal injury, especially where a corporation is defendant, by sympathy and prejudice."

This opinion was handed down June 1, 1897, and the Bar generally recognizing the impropriety of attempting to introduce evidence which this court had declared to be not only immaterial but prejudicial, apparently refrained for many years from attempting to influence juries by calling attention to the factor of insurance in cases involving negligence on the part of a defendant.

Twenty years later, however, the question again arose in a slightly different form. In *McCann* v. *Twitchell*, 116 Me., 490, as a part of a conversation alleged by plaintiff to have occurred between him and defendant, plaintiff testified that defendant said "that he was protected by liability insurance." Exceptions were taken to the introduction of this testimony. But it appeared that the presiding Justice, after having permitted the inadmissible

testimony, changed his ruling, ordered it stricken from the record and instructed the jury to disregard it. Exceptions were overruled on the ground that "ordinarily the erroneous admission of improper evidence is cured, or so far cured as to be no longer a sufficient ground for a new trial, by being withdrawn or struck from the record and an instruction given to the jury to disregard it entirely."

It is to be noted that defendant did not in this case request a mistrial. He objected to the admission of the testimony and his objection being overruled, noted an exception. After deliberation, the presiding Justice reversed his ruling and ordered the evidence stricken from the record, thus in effect sustaining defendant's objection and leaving him no ground for exception.

It is also to be noted that the admissible evidence in the case warranted a finding of liability and that the damages assessed were reasonable; in other words, that the result indicated that the jury was not prejudiced by having learned of the fact of insurance. The opinion states, "A careful study of the evidence does not satisfy us that the verdict was wrong, either as to defendant's liability, or as to the amount of damages awarded the plaintiff."

Apparently some members of the Bar were impressed with the view that the position taken by the Court in *McCann* v. *Twitchell*, supra, created an opportunity to get before the jury the immaterial and prejudicial fact of insurance and suffer no more severe penalty than an instruction from the Court to the jury that the fact should be disregarded in so far as liability or the extent of damages was concerned; and in the case of *Goodie* v. *Price*, 125 Me., 36, it appeared that plaintiff's attorney was guilty of "deliberately pursuing a course of cross-examination of defendant's son for the purpose of disclosing the fact that an insurance company was defending the cause."

That case came before this court on general motion, in connection with which defendant urged that "though the verdict might be permitted to stand upon the evidence pertaining to the accident and the manner in which it happened, the case was prejudiced against the defendant by improper conduct of plaintiff's attorney."

After stating that "a careful examination of the evidence does not reveal a verdict that warrants the intervention of the court," the opinion discussed the matter of the injection into the case of the insurance feature: "The court cannot avoid the conclusion from the testimony that the plaintiff's attorney in pressing the cross-examination which was calculated to disclose the presence of an insurance company deliberately transgressed the bounds of legal ethics in his persistent effort to accomplish that end."

We must assume that, had not the verdict satisfied the conscience of the Court, new trial would have been ordered because of the misconduct of counsel so emphatically condemned.

In *People* v. *Ah Len* (Cal.), 27 Am. St. Rep., 103, where it appeared that respondent's counsel attempted to get before the jury matters not within the issues, by means of asking improper questions, it was held that such conduct furnished good reason for a new trial; and in *Marshall* v. *Taylor* (Cal.), 35 Am. St. Rep., 144, the Court, after citing the former case with approval, said, "The rule is a most wholesome one. A trial court should always be alert to prevent an attorney from obtaining advantages in jury trials by the practice of methods not countenanced by the ethics of the profession."

We think that the attitude of this court in *Goodie* v. *Price*, supra, has been misunderstood. The basic fact has apparently been overlooked, that in that case the court denied the motion on the ground that the effort which counsel had made to instill prejudice in the minds of the jurors failed to prevent them from judging the case fairly on its merits, and the case has been considered authority for the proposition that the introduction of prejudicial evidence may be attempted with impunity, that the presiding Justice does his full duty in the premises by excluding it and instructing the jury to disregard it, and that these things having been done, this court is without power to disturb the verdict if plaintiff prevails, or to do more than to somewhat impotently suggest that counsel acted improperly.

We do not so read *Goodie* v. *Price*. If we did regard it as establishing such a rule, we should unhesitatingly overrule it. Correctly interpreted, it stands for no more than that the appellate court

will not order a new trial under any circumstances when the verdict is manifestly just.

We have already noted that the instant case is the first to come before this court in which the point involved is raised on exceptions to the refusal of the presiding Justice to order a mistrial.

The ordering of a mistrial is discretionary with the presiding Justice and no exceptions lie to his refusal unless that discretion is abused. *Gregory* v. *Perry*, 126 Me., 99. We are not willing to say that this record discloses abuse of discretion. Had the motion been renewed after plaintiff had, in spite of the admonition of the presiding Justice, persisted in bringing the matter of insurance to the attention of the jury, we assume that the motion would have been granted. Had not such been the case, we should not hesitate to sustain an exception. As the case stands, we can only say that the presiding Justice was too confident of his ability to impress the jury with a correct view of the situation.

His idea was that expressed by Mr. Justice Harlan in *Penn Co.* v. *Roy*, 102 U. S., 451, that "the presumption should not be indulged that the jury were too ignorant to comprehend or too unmindful of their duty to respect instructions as to matters peculiarly within the province of the court to determine." That this, ordinarily speaking, is the correct view goes without saying; but jurors are human beings and as such occasionally err in judgment even when unmoved by prejudice. The chance of error in their findings is multiplied many times when prejudice once finds lodgment in their minds and prejudicial impressions once formed are not readily effaced by judicial admonition or otherwise. This evidently is the belief of attorneys who insist upon calling the jury's attention to matters which even those least learned in the law know to be immaterial, and the result finally reached, as expressed in the verdict rendered in the case at bar, confirms our view and theirs in this respect and emphasizes the fact that when evidence of the nature complained of is improperly introduced, the only safe course to be followed is to order a mistrial when requested to do so by opposing counsel. This is true whether the offending testimony is offered deliberately or comes into the case by real or seeming inadvertence. In the one case, the misconduct of counsel merits re-

buke, and in the other, possibility of a prejudiced verdict is imminent.

Without reviewing in unnecessary detail the facts in the instant case, its salient features may be concisely stated. Defendant, driving upon the right side of the road, approached his home from a direction which necessitated his crossing the highway in order to enter his premises and turned from his direct line of travel for that purpose. Plaintiff was proceeding in the opposite direction at a rate admitted to be forty miles an hour and, while distant, according to his own testimony, "sixty or a hundred feet" from defendant, with an unobscured view on a practically level highway twenty feet wide, observed the course taken by defendant. He continued to drive on his extreme right and the cars collided near the edge of the ditch on plaintiff's right. He testified that he slowed down to twenty miles an hour as he approached defendant and at the same time put on his brakes. There was no question but that the collision would have been avoided had he swung to the left and passed to the rear of defendant's car. He had that opportunity as well as the opportunity to stop his car. He did neither but continued on a course which made collision inevitable unless defendant stopped his car.

Under these circumstances, even assuming defendant's negligence, which is by no means clear, no unprejudiced jury, properly instructed and comprehending the testimony, could fail to find plaintiff guilty of negligence. The evidence is so clear in this respect that, reluctant as we are to reject the finding of a jury on an issue of fact, we are compelled to do so in this case.

The situation differs from that which appeared in *Fernald* v. *French*, 121 Me., 4. In that case, the evidence indicated that defendant undertook to cross the highway in front of an approaching car and so near that the exercise of ordinary care would have caused him to await its passage. In that opinion, the Court said, "It should be declared as a rule of law governing the movement of motor vehicles under the conditions and circumstances of the present case that a car intending to cross the street in front of another car should so watch and time the movements of the other car as to reasonably insure its safe passage either in front or rear

of such car, even to the extent of stopping and waiting if necessary. This is no new rule but simply the application of a well established principle to new conditions."

Obviously the rule was not new. The case simply emphasizes the proposition that the driver of every motor vehicle must exercise ordinary prudence; and this is so whether he has a right of way or not.

In the instant case, plaintiff had the technical right of way, and we are but reiterating familiar law when we say that the possession of the right of way does not relieve the driver of a motor vehicle from the exercise of ordinary care. He proceeded with utter disregard of the danger of collision. His conduct in this respect was not that of a reasonably prudent man.

We can account for the verdict on no other ground than that the prejudicial testimony which was introduced caused the jury to err in its judgment.

*Motion sustained.*